**R. G. LE TOURNEAU, Inc., v. GAR WOOD INDUSTRIES, Inc.**

No. 21891–W.

District Court, N. D. California, S. D.

July 16, 1943.

Webster & Webster, Percy S. Webster, and Roger B. Webster, all of Stockton, Cal. (Naylor & Lassagne and Theodore H. Lassagne, both of San Francisco, Cal., of counsel), for plaintiff.

Harness, Dickey & Pierce and Wm. Edward Hann, all of Detroit, Mich., Chas. E. Townsend, of San Francisco, Cal., and Lyon & Lyon, Leonard S. Lyon, and Reginald E. Caughey, all of Los Angeles, Cal., for defendant.

WELSH, District Judge.

The motion of the defendant to dismiss this suit as to Le Tourneau Patent 1,963,-665, or for leave to file a supplemental pleading is denied.

On the issue of invalidity of claims 2, 5, 7, 20 and 22 of Le Tourneau Patent 1,963,-665 and claims 5 and 6 of Maloon Reissue Patent 21,947, I find in favor of the defendant.

The claims in suit of the Maloon Patent were anticipated by the disclosures of the Le Tourneau Patent 1,963,665 in every respect save in the use of a pivoted main bowl in the Maloon scraper in place of the stationary main bowl with forwardly movable rear endgate of the Le Tourneau scraper. Pivoted dumping bowls were old in the scraper art when the Maloon patent issued. Ball Patent 1,851,234, Ball Wagon Grader Company Australian Patent 11,194, Ball Patent 1,593,007, Barker Patent 22,-847 and Pfeil Patent 1,293,536, all prior patents in evidence covering road scrapers, each reveal the structure of a pivoted main dumping bowl in the described scraper. The Bodinson camel-back and clamshell scrapers, manufactured and in use during 1930 and 1931, also had the pivoted main bowl. The claims in suit of the Maloon Patent which was issued November 18, 1941, do not, therefore, cover a new combination. They merely set forth an aggregation of elements all old in the scraper art, none of which perform or produce any new or different function or operation in the claimed combination of the Maloon patent than were theretofore performed by them. The Maloon patent I hold void for want of novelty and invention.

As to the claims of the Le Tourneau patent 1,963,665, I find the structure defined thereby anticipated by the disclosures of the prior Le Tourneau patent 1,857,157 in every respect save as to the addition to the scraper described in the prior patent, of an auxiliary front bowl, its connection for actuation to the same cable system which in the disclosures of the prior Le Tourneau patent operated to move the endgate of the scraper, so that a common means, that is, a single pull of the cable will operate to actuate both endgate and auxiliary bowl in sequential predetermined order.

The addition to the Le Tourneau scraper in the later patent of an auxiliary pivoted front bowl to increase load capacity, represented no innovation in the field of the scraper art. Auxiliary front bowls were part of the scraper described in the prior Ball Patent 1,593,007 and in the prior Pfeil Patent 1,293,536. The Bodinson machines utilized them. In fact, plaintiff lays no claim to novelty and invention in the addition of an auxiliary front bowl to its scraper, but rather in the attachment of the front bowl to the cable system adopted in the prior Le Tourneau scraper to actuate the endgate, in such manner as to provide a common means to move the front bowl and endgate in sequential predetermined order. The evidence satisfies me that the connection of the front bowl to the cable running

to the endgate so that the two objects thus connected to the same cable system were moved in predetermined order by a single pull of the cable did not involve invention.

A cable and pulley system is a well known and commonly used load moving device. No invention can be attributed to Le Tourneau for utilizing this method for the sole purpose of imparting movement to the bowls. of his scraper. And unless it can be said that the use of a single pull cable as a common means to actuate two different objects connected therewith, in predetermined order, was so novel an application of the cable and pulley system that its adaptation to actuate the front bowl of the Le Tourneau scraper would not occur to a person possessed of ordinary mechanical and engineering skill who was confronted with the old Le Tourneau structure and the problem of imparting operating means to actuate the added auxiliary bowl in advance of any imparting of movement to the rear endgate, no invention can be predicated upon its adaptation by Le Tourneau.

The Dunbar Patent 1,174,834, shows the utilization of a single cable and pulley system as a common means to actuate in sequential order the front and rear bowl of a drag line bucket. The plaintiff's witness, Doble, testified that it was not necessary for Le Tourneau to specify in his patent how to raise the auxiliary bowl first on the movement of the cable, "because any designer knows how to reave cables to raise the auxiliary bowl in the program as defined in the specifications of the patent. * * * He knows if he has more resistance to overcome, he has to put more runs of cable * * * he has been trained to know that * * * in his engineering education. I have done it many times, using block and tackle; so has any sailor, many thousands of them." Plaintiff's witness, Le Tourneau, admitted that it was an ordinary matter of common engineering knowledge that, in cable and pulley systems, if a cable system is connected to two different loads, the load offering the least resistance to the force applied by the cable would be moved first. Defendant's witness, Brush, testified that the method of accomplishing the sequential movement of two loads attached to the same cable system is well known and a matter of common mechanical knowledge. This and other evidence in the record convinces me that while there may have been novelty in the application of a single cable

system to actuate in predetermined order the bowls of the Le Tourneau scraper, resulting as claimed in the production of a scraper having greater utility and commercial success, the adaptation of the cable and pulley system to accomplish the results obtained did not involve more than the exercise of ordinary mechanical and engineering skill and knowledge. Le Tourneau did no more than apply to his scraper as a movement producing means, an old and commonly known load moving device which carried the same result in character as the result which said device was commonly known to be capable of accomplishment. I therefore hold that the claims in suit of the Le Tourneau Patent 1,963,665, are void for want of invention.

Findings of Fact and Conclusions of Law will be prepared in accordance with the views expressed in this opinion, and judgment entered in favor of defendant with costs.